NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, 7 Rutger Park, Utica, New York, Plaintiff,

v.

John HOH, Enea Borra, George Pfleiderer, George L. Walsh, Edward Siegmann, Jerome Tierman, Elmer B. Sidden, Valentine J. Frank, Frank J. Fink, David M. Conroy, Francis J. Larkin, Individually and as Trustees of the Brewery Workers Pension Fund; Dominick Accetta, Kenneth D. Carroll, Daniel Greenhut, Individually and as officers of Brewery Workers Local Union No. 46, International Brotherhood of Teamsters; Pep-

sico, Inc. and F & M Schaefer Brewing Co., Defendants.

and

John HOH, Dominick Accetta, Daniel Greenhut, and Kenneth Carroll, Counterclaim Plaintiffs,

v.

Al SGAGLIONE, Individually and as Executive Administrator of the New York State Teamsters Conference Pension and Retirement Fund; Josephine Dontino, as Assistant Administrator of the New York State Teamsters Conference Pension and Retirement Fund; Rocco F. Deperno, Irving Wisch, T. Edward Nolan, Victor Mousseau, Paul E. Bush, Kepler Vincent, and Jack Canzoneri, Individually and as trustees of the New York State Teamsters Conference Pension and Retirement Fund, Counterclaim Defendants.

No. 81–CV–1172.

United States District Court, N.D. New York.

Dec. 30, 1982.

---

Peter P. Paravati, Utica, N.Y., for plaintiff.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for defendants Hoh, Borra, Pfleiderer, Walsh, Siegmann, Accetta, Carroll and Greenhut; Susan Martin, New York City, of counsel.

Moskowitz, Altman & Frankel, New York City, for defendant Jerome Tierman; Steven M. Berlin, New York City, of counsel.

Friedman & Gass, P.C., New York City, for defendant Pepsico., Inc., Peter N. Wang, New York City, of counsel.

Rogers & Wells, New York City, for defendant F & M Schaefer Brewing Co.; David A. Schulz, New York City, of counsel.

MEMORANDUM–DECISION and ORDER

MINER, District Judge.

I

In a memorandum-decision and order dated August 13, 1982, 554 F.Supp. 519, this Court granted defendants' (counterclaim plaintiffs') motion for summary judgment on the claim and stayed a ruling on their motion for summary judgment on the counterclaims, noting that allegations of violations of certain provisions of ERISA, alleged to be violated by counterclaim defendants, were pending in a class action brought in the United States District Court for the Eastern District of New York.

*Brewery Delivery Employees Local Union No. 46, IBT v. Mosley,* 80–1476 (I.G.) (E.D. N.Y.). By letter dated October 20, 1982, counterclaim defendants requested that the Court rescind the stay of the counterclaims applicable to defendant Hoh. In open court on November 12, 1982, pursuant to counterclaim plaintiffs' Rule 60(b) motion for relief from the August 13, 1982 order deferring ruling on the counterclaims, and pursuant to counterclaim defendants' request, this Court agreed to rule on the Hoh counterclaims, it appearing that the Eastern District action would not resolve the issues raised by those counterclaims.[1] Before this Court, then, is counterclaim plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56 on the counterclaims concerning the legality, under the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"), of the Teamsters Fund's suspension of Mr. Hoh's benefits under the fund's reemployment rule.[2]

## II

John Hoh presently is a retired participant in the New York State Teamsters Conference Pension and Retirement Fund ("Teamsters Fund"). He originally applied for his pension in November, 1976 and began receiving pension benefits effective January 1, 1977 from the Brewery Workers Pension Fund ("Brewery Fund").

Prior to its merger with the Teamsters Fund, Mr. Hoh was a member of the Brewery Fund and served as one of its trustees from 1950 until his resignation, which became effective on December 1, 1976, the date the merger was adjudged complete by the New York State Supreme Court.[3] Mr. Hoh also was president of Brewery Workers Local Union No. 3, I.B.T. ("Local 3") from its creation in 1963 (through the merger of

---

1. Counterclaims one and eight, which relate to the Eastern District suit, will remain stayed pending resolution of that action. Counterclaims two through seven all relate to the Teamsters Fund application of its 1980 reemployment rule and its suspension of John Hoh's benefits. These counterclaims will be dealt with here and may be summarized as follows:

(a) Counterclaim Two (Answer and Counterclaims, p. 16–22) alleges that retroactive application of the 1980 reemployment rule to John Hoh and other participants who retired under the 1976 Teamsters Plan constitutes a violation of the 1976 plan and a breach of contract cognizable under Section 301 of the LMRA, 29 U.S.C. § 185;

(b) Counterclaim Three (p. 22) alleges that application of the 1980 reemployment amendment to participants who retired under the 1976 Teamsters Plan, and the suspension of Hoh's benefits in purported reliance on said amendment, was arbitrary and capricious and constituted a breach of fiduciary duty under ERISA Section 404, 29 U.S.C. § 1104;

(c) Counterclaim Four (p. 22–24) alleges that the fund's determination that John Hoh's present employment violated the 1980 reemployment amendment and the Teamsters Fund's suspension of his pension benefits constitutes a breach of contract;

(d) Counterclaim Five (p. 24–26) alleges that the fund's determination that John Hoh violated the 1980 reemployment amendment and the Teamsters Fund's suspension of his benefits was arbitrary and capricious and constitutes a breach of fiduciary duty under ERISA Section 404, 29 U.S.C. § 1104;

(e) Counterclaim Six (p. 25–26) alleges that application of the 1980 reemployment amendment to John Hoh constitutes a violation of the vesting requirements of ERISA Section 203(a), 29 U.S.C. § 1053(a);

(g) Counterclaim Seven alleges a breach of fiduciary duty under ERISA Section 404 and a violation of the notice and appeals procedure requirement contained in ERISA Section 503, 29 U.S.C. § 1133, by the manner in which John Hoh's benefits were suspended and by the Teamsters Fund's refusal to hold a hearing on Mr. Hoh's intra-fund appeal. (Affidavit of Susan Martin in Support of Motion Pursuant to Rule 60(b), ¶ 8).

2. Counterclaim plaintiffs "in the interests of an expeditious determination of the outstanding issues" "request" leave of the Court to deem the counterclaims amended to remove the class action allegations. Fed.R.Civ.P. 15. (Affidavit of Susan Martin in Support of Motion Pursuant to Rule 60(b), ¶ 13). Since a motion to amend a complaint is liberally granted, the Court will grant the counterclaim plaintiffs' application here. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *S.S. Silberblatt v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979).

3. For a recitation of the strained history of the merger, see *New York State Teamsters Conference Pension and Retirement Fund v. Hoh,* 554 F.Supp. 519 (N.D.N.Y.1982).

seven teamsters locals) until its dissolution in 1976. Prior thereto, Hoh was an officer of Local 69, one of the Brewery Workers locals that merged in 1963 to form Local 3. Before Hoh became a union officer, he was employed by Piels Brothers, Inc. Brewery and Rheingold Breweries, Inc.[4] It is uncontroverted that, at the time Hoh retired, his right to the benefits under the Brewery Plan had become vested.

Section 4(7) of the Brewery Plan, in effect at the time John Hoh retired, provided that if a pensioner entered the service of a participating company, his pension would terminate and resume when the pensioner ceased to work for the participating company. Section 4(7) of the Brewery Plan was the only restriction placed on a pensioner's right to be employed after retirement.

Under the Merger Agreement, participants in the Brewery Fund were allowed to elect whether to receive benefits under the Brewery Plan or the Teamsters Plan. Moreover, pursuant to that agreement, a Brewery Fund member's election of rights was to be made upon receipt of a notice from the Teamsters Fund, describing the right of election.

Although the merger took place in 1976, it was not until June, 1979 that the Teamsters Fund sent notices to former Brewery Fund members, including John Hoh, setting forth their options and rights of election under the Merger Agreement.[5] Included with the notices to Brewery Fund members was a summary of the important provisions of both plans, and an "Interpretation" of each plan. Included in the "Interpretation of the Teamsters Plan" was a provision concerning employment after retirement:

No one may draw a pension benefit for any month in which he is employed for one or more days by a contributing employer. If you decide that you want to return to work for a contributing employer, your pension payments will cease during the period of your re-employment. However, you are free to work in another industry and still receive your monthly pension benefits.

(Interpretation of the Teamster Plan, p. 4; Affidavit of John Hoh, Ex. G). Allegedly after reviewing the "Interpretation," Mr. Hoh exercised his right of election and chose to receive benefits pursuant to the Teamsters Plan.

The Teamsters Plan in effect at the time Hoh exercised his election included an amendment, effective January 1, 1976, containing the following terms in regard to reemployment of a pensioner:

Any Pensioner who becomes re-employed by a Contributing Employer, as herein defined, shall not be entitled to a pension benefit for any month during any part of which he is so re-employed. Upon subsequent retirement under the Plan, he shall again be entitled to receive a pension in the same amount as his original pension, except in the case of a Disability Award Pensioner as herein set forth in paragraph 2 of this subsection B.

(1976 Teamsters Plan, Section V.B(1); Affidavit of John Hoh, Ex. H). However, on October 20, 1980, the Teamsters trustees passed a new rule, which is the center of the controversy at bar, regarding reemployment of pensioners. The 1980 amendment prohibits reemployment by pensioners as follows:

4. Pursuant to the collective bargaining agreement between the brewery local unions and the Brewers Board of Trade (an employer association), employees elected to union office were deemed to be on leave of absence, and they continued to accumulate seniority in the industry. Correspondingly, under the terms of the Brewery Fund Pension Plan, membership in the plan was specifically provided during leaves of absence from service with a participating company because of union business.

5. By order entered by the Supreme Court, Queens County, on September 19, 1977 the Teamsters Fund and its trustees were held in contempt of court because, among other reasons, they failed to provide the notice required by the Merger Agreement. That same court on May 18, 1979 ordered that the Teamsters Fund and its trustees be fined and directed imprisonment for failing to purge their contempt of court by failing to provide the notice required by the Merger Agreement.

Whenever a New York State Teamsters Conference Pension and Retirement Fund retiree goes to work in the same industry, trade or craft and same geographic area or works for a contributing employer in any capacity or for a former contributing employer in any capacity, [sic] will not be entitled to any pension for any month he becomes re-employed.

(Affidavit of John Hoh, Ex. I). Notification of the 1980 reemployment amendment was first given to Teamsters Fund participants by a letter dated on or about February 9, 1981.

By letter dated June 23, 1981 to John Hoh, counterclaim defendants and Teamsters Fund Executive Administrator Al Sgaglione inquired as to Mr. Hoh's current employment status. In response, by letter dated June 18, 1981, Mr. Hoh stated that he was employed as a General Organizer of the International Brotherhood of Teamsters ("I.B.T."), located at 25 Louisiana Avenue, Washington, D.C. and had been so employed for the total period of his retirement. In a letter dated July 13, 1981, the Teamsters Fund informed Mr. Hoh that his benefits were being suspended for alleged violations of the 1980 reemployment rule, and, in fact, Hoh's benefits were suspended commencing July 1, 1981. (Affidavit of John Hoh, Ex. K). Mr. Hoh has not received benefit payments since that time.

Mr. Hoh alleges that the 1980 reemployment amendment is inapplicable to his retirement since he never consented to the new rule. Moreover, Hoh maintains that even if the 1980 amendment were applicable, it does not prohibit his present employment as a general organizer in the International Brotherhood of Teamsters.[6] Therefore, Hoh claims, the suspension of his benefits is a violation of the LMRA and ERISA.

The Teamsters Fund conversely argues that the suspension here is valid since the suspension for violation of the 1980 reemployment rule was not retroactively applied to Mr. Hoh. That is, it is the position of the Teamsters Fund that none of the benefits paid to Hoh was suspended prior to the passage of the rule by the Teamsters Fund Trustees. ERISA, it is alleged, became effective with relation to such suspensions at the time of ERISA's effective date of January 1, 1975. From that point until the passage of the rule by the trustees, there was no interference with Hoh's pension. However, the Teamsters Fund contends, upon passage of the 1980 reemployment rule, Hoh's pension was subject to suspension. In other words, the 1980 reemployment rule's application to Hoh is valid since the rule was designed to conform to § 203(a)(3)(B) of ERISA, 29 U.S.C. § 1053(a)(3)(B).[7]

6. Hoh argues that the IBT is not, and never has been, a contributing employer to the Brewery and Teamsters Funds. The IBT, Hoh asserts, is an international union composed of affiliated locals, joint councils and trade divisions and is not and never was an industry covered by the Brewery Plan. Moreover, it is alleged that Hoh's employment with the IBT does not coincide with the geographic area covered by the Brewery Plan: New York, Bronx, Kings, Queens, Richmond, Westchester, Nassau and Suffolk Counties. Brewery Plan, § 3(1). (Affidavit of John Hoh, ¶ 42).

7. 29 U.S.C. § 1053(a)(3)(B)(ii) permits suspension of benefit payments under a multiemployer plan if the retiree is subsequently employed in the same trade and geographical area covered by such plan:

A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the Plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits … (ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the Plan, as when such benefits commenced.

Thus, the Teamsters Fund alternatively argues that since Hoh was in fact a union official and not an employee of the brewery industry prior to his retirement, and since he is now employed as an organizer by the IBT, Hoh is engaged in the same trade or craft and industry and in the same geographic area of the Teamsters Fund (the Fund covers the entire states of New York and Pennsylvania and parts of Massachusetts and Canada). Therefore, it is alleged, the trustees properly suspended Hoh.

## III

■ It is well established that the decisions of those empowered with the administration of an employee pension trust shall be sustained unless arbitrary or capricious or contrary to law. *Riley v. MEBA Pension Trust,* 570 F.2d 406, 412 (2d Cir.1977). This is especially true where, as here, the trust instrument confers broad power on the administrators to determine eligibility for benefits under the plan. *Id.* at 410.

In determining whether amendments are arbitrary and capricious when applied to a particular participant, the Second Circuit has set forth a number of factors to be considered:

the extent to which the participant was an intended beneficiary of the plan, the extent to which the amendment is applied retroactively to strip the participant of previously earned credits, the extent to which he was notified of the amendment, and the extent to which it is shown that actuarial concerns require denial of benefits to him.

*Argo v. Joint Plumbing Industry Bd.,* 623 F.2d 207, 210 (2d Cir.1980).

In *Argo* and in the companion case of *Valle v. Joint Plumbing Industry Board,* 623 F.2d 196 (2d Cir.1980), the court held that application of the amended requirements to the participants in those cases was arbitrary and capricious, since the partici-pants were all intended beneficiaries under the plan, they had been deprived retroactively of rights under the plan, and they had received insufficient notice by which they could have protected themselves from the impact of the plan amendments. Recognizing that, as here, the amendment was not inherently arbitrary or unreasonable *per se,* the Second Circuit in *Valle* nevertheless held, "the flexibility allowed to pension fund trustees is limited by principles of fundamental fairness. However reasonable the rules may be on their face, trustees cannot be allowed to apply them in an arbitrary and capricious manner to deny benefits." 623 F.2d at 203.[8]

■ Here, despite the Teamsters Fund's protestation to the contrary, Hoh is an intended beneficiary of the Fund.[9] It is also clear that the Teamsters Fund trustees are retroactively applying the 1980 reemployment amendment, since Hoh had retired and was collecting benefits pursuant to *previously existing rights* under the Brewery Fund and, after Hoh's election pursuant to the Merger Agreement, under the Teamsters Fund.[10] Moreover, adequate notice here is wholly missing since, to be effective, notification of rule changes, necessary to allow the employee to satisfy eligibility requirements, must be made *prior* to retirement. *See Argo v. Joint Plumbing Indus-*

8. Other courts confronted with retroactive application of plan amendments have uniformly reached the same conclusion under either the LMRA or ERISA. *See Stacey v. Combs,* 671 F.2d 602 (D.C.Cir.1982):

After workers have retired and unalterably changed their ability to satisfy new eligibility requirements for pension benefits, it is arbitrary and capricious for the managers of a pension trust to change the eligibility requirements for benefits against those retired workers who, given the continuance of their factual situation and the inexorable passage of time, would qualify for benefits under the requirements existing at the time of their retirement and upon which they relied. 671 F.2d at 606.

*See also Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers,* 542 F.2d 1128 (9th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Snyder v. Titus,* 513 F.Supp. 926 (E.D.Va.1981); *Winpisinger v. Aurora Corporation of Illinois,* 456 F.Supp. 559 (N.D.Ohio 1978); *Kraft v. Felder,* 452 F.Supp. 933 (S.D.N.Y.1978).

9. *See New York State Teamsters Conference Pension and Retirement Fund v. Hoh,* 554 F.Supp. at 523 n. 3 and 4 (N.D.N.Y.1982). Pursuant to the Brewery Workers Pension Fund Plan, brewery employees on leaves of absence due to union duties pursuant to the Collective Bargaining Agreement, as Mr. Hoh was, are still to be considered members of the plan, and thus, entitled to benefits under the Brewery Fund, and after the Merger Agreement, to benefits under the Teamsters Fund.

10. *Thompson v. IAM National Pension Fund,* 616 F.2d 343 (7th Cir.1980), cited by the Teamsters Fund as authority for the proposition that application of the 1980 amendment here is not retroactive, is inappropriate as *Thompson* does not deal with a retroactive adoption and application of a reemployment rule.

*try Bd., supra,* 623 F.2d at 211 n. 6. Therefore, although the 1980 reemployment amendment is not *per se* unreasonable, application of the amendment here to Mr. Hoh in order to retroactively divest him of earned benefits, especially absent a showing of actuarial concerns justifying such divestments, is arbitrary and capricious under *Argo* and *Valle* and, therefore, constitutes a breach of fiduciary duty under ERISA.[11]

Moreover, even if the 1980 reemployment amendment is not considered retroactive and, therefore, could be applied to Hoh, the Teamsters Fund breached its fiduciary duties by suspending Hoh's benefits because both the determination that he violated the rule and the manner in which the benefits were suspended were arbitrary and capricious. Section 203(a)(3)(B)(ii) of ERISA, 29 U.S.C. § 1053(a)(3)(B)(ii), permits multiemployer plans to suspend benefits to a participant who becomes reemployed, "in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when benefits commenced." When John Hoh's benefits commenced, he was covered by the Brewery Plan. Accordingly, to conform with Section 203 of ERISA, his current employment must be compared with the industry, trade and craft, and geographic area covered by the Brewery Plan.[12]

The employers under the Brewery Plan were engaged in brewing and distributing beer. Regulations under Section 203 provide that industry "means the business activities of the types engaged in by any employers maintaining the plan." 29 C.F.R. § 2530.203–3. Hoh's current employer, the International Brotherhood of Teamsters, is not involved in the brewing or distribution of beer. Moreover, at no time during the existence of the Brewery Fund was the IBT ever a contributing employer to that fund.[13] Similarly, the IBT is not involved in the same trade or craft as in the brewery industry, and Hoh is not employed in the same geographic area covered by the Brewery Plan.[14] Since the requirements under § 203(a)(3)(B)(ii) are conjunctive, and absence of any one factor precludes a violation of this section, employment by Hoh with the IBT is valid under the Brewery Plan, and because the IBT is not a contributing employer, valid even under the Teamsters Fund Plan. Therefore, denial of benefits to Hoh under this section is arbitrary and capricious.

Indeed, the very manner in which Hoh's benefits were terminated constituted a breach of the Teamsters Fund's fiduciary duties. The regulations under Section 203 provide in relevant part:

No payment shall be withheld by a plan pursuant to this section unless the plan

---

**11.** Section 404 of ERISA, 29 U.S.C. § 1104, codifies the standards of conduct required of fiduciaries in discharging their duties with respect to employee benefit plans. This section incorporates familiar common law principles of the trustee's duty of loyalty and prudence. It was the express intent of Congress in enacting ERISA to encourage and enhance the accountability of fiduciaries to the participants and beneficiaries of the plan and to provide an effective remedy for a violation of these standards. *See* H.Rep. No. 533, 93d Cong.2d Sess., *reprinted* in [1974] 3 U.S.Code, Cong. & Admin.News, 4639, 4655. Courts have recognized this legislative mandate and have enforced ERISA's underlying purpose. *See, e.g., Marshall v. Snyder,* 572 F.2d 894, 901 (2d Cir.1978).

**12.** 29 C.F.R. § 2530.203–3, a regulation issued by the Secretary of Labor pursuant to 29 U.S.C. § 1053, provides that the area covered by the plan immediately prior to retirement controls.

Here, when John Hoh applied for benefits in November, 1976, the merger was not yet complete and thus the area covered by the Brewery Plan controls.

**13.** Even if one considers, due to Hoh's election, the 1976 Teamsters Fund Plan controlling here, the IBT cannot be considered a "contributing employer" as defined by the plan. " 'Contributing Employer' means any person, firm, or corporation having a collective bargaining agreement with the Union which is authorized by the Board of Trustees to participate in the Plan. . . ." New York State Teamsters Conference Pension and Retirement Fund, p. 2 (Affidavit of John Hoh, Ex. H). The IBT clearly does not fall into this category.

**14.** *See* n. 6 *supra.* There is no evidence presented to this Court that Hoh organizes for the IBT in New York.

notifies the employee by personal delivery or first class mail during the first calendar month or payroll period in which the plan withholds payments that his benefits are suspended. Such notification shall contain a description of the specific reasons why benefit payments are being suspended, a general description of the plan provisions relating to the suspension of payments, a copy of such provisions, and a statement to the effect that applicable Department of Labor regulations may be found in § 2530.203–3 of the Code of Federal Regulations. In addition, the suspension notification shall inform the employee of the plan's procedure for affording a review of the suspension of benefits. Requests for such reviews may be considered in accordance with the claims procedure adopted by the plan pursuant to section 503 of the Act and applicable regulations. . . .

29 C.F.R. § 2530.203–3(b)(4).

Even a cursory reading of the July 13, 1981 suspension letter demonstrates that it was woefully defective. It did not provide "specific reasons why benefit payments are being suspended," nor did it provide a copy of the rule or a reference to where the appropriate federal regulation could be found. Moreover, the letter contained no mention "of the plan's procedure for affording a review of the suspension of benefits." Letter of July 13, 1981 from Al Sgaglione, Executive Administrator of the Teamsters

Fund to John Hoh. (Affidavit of John Hoh, Ex. K).

Moreover, by letter dated July 23, 1981, Hoh stated that he wished to appeal the determination of suspension and requested a hearing before the Board of Trustees. (Affidavit of John Hoh, Ex. L). It is clear that a pensioner has a right to appeal:

> In accordance with regulations of the Secretary every employee benefit plan shall
>
> .   .   .   .   .
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Section 503 of ERISA, 29 U.S.C. § 1133. See 29 C.F.R. § 2650.503.

Here, it is uncontroverted that the Teamsters Fund failed to provide Hoh access to a review procedure as required under Section 503.[15] Therefore, the Teamsters Fund suspension of John Hoh's benefits infringed statutory due process and constituted a breach of fiduciary duty under ERISA. See Richardson v. Central States, Southeast and Southwest Areas Pension Fund, 645 F.2d 660, 664–5 (8th Cir.1981); Wardle v. Central States, Southeast and Southwest Areas Pension Fund, 627 F.2d 820, 828 n. 7 (7th Cir.1980).[16] Suspension here, no matter how one approaches it, is inappropriate.

**15.** Hoh alleges that the fund informed his attorney and him that a hearing would be held on September 30, 1981, before the Appeals Board of the fund. Upon arrival, they not only learned that the hearing was cancelled, but were served with the summons and complaint in the instant lawsuit. (Affidavit of John Hoh, ¶¶ 44–46).

**16.** Hoh alternatively argues that the suspension of his pension benefits constituted an impermissible forfeiture of vested rights in violation of section 203 of ERISA, 29 U.S.C. § 1053(a). This is undoubtedly true, since Hoh retired in 1976 and section 203(a) became applicable to plans in existence on January 1, 1974 at the commencement of their plan years after December 31, 1975. 29 U.S.C. § 1061(b)(2). See

Cohen v. Martin's, a New York Corporation, 694 F.2d 296 (2d Cir.1982). Therefore, since section 203(a) requires that the plan shall provide that an employee's right to his normal retirement is non-forfeitable upon the attainment of normal retirement, and Hoh applied for retirement benefits at normal retirement age as defined by the Brewery Fund Plan, Hoh's benefits are vested and non-forfeitable. A plan's failure to make payments to an eligible participant constitutes an impermissible forfeiture under the Act unless the conditions described in section 203(a)(3) are met. Here, the Teamsters have not come forward with any persuasive evidence that Section 203(a)(3) conditions were met. Fed.R.Civ.P. 56(e). See n. 13 and accompanying text supra. See also Swackard v. Commission House Drivers, Union Local No.

## IV

Accordingly, counterclaim plaintiffs' motion for summary judgment on the Hoh counterclaims is granted in all respects. Fed.R.Civ.P. 56(c).

It is so Ordered.

*400,* 647 F.2d 712 (6th Cir.), *cert. denied,* 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981); *McGinnis v. Joyce,* 507 F.Supp. 654 (N.D.Ill. 1981); *Haas v. Manufacturers Hanover Trust Co.,* 473 F.Supp. 212 (S.D.N.Y.1979), *cert. denied,* 445 U.S. 963, 100 S.Ct. 1652, 64 L.Ed.2d 239 (1980). In other words, the 1976 Teamsters Plan under which John Hoh elected to

retire did not contain the 1980 reemployment amendment. Accordingly, the suspension of his benefits in 1981 constituted a prohibited forfeiture of vested rights under ERISA. Moreover, even if one could consider the 1980 reemployment amendment applicable, Hoh did not violate its terms. Suspension is unwarranted.